COMMITTEE OF UNSECURED
CREDITORS OF SPECIALTY
PLASTIC, Plaintiff,

v.

Eugene DOEMLING, Defendant.

Civ. A. No. 90–1096.

United States District Court,
W.D. Pennsylvania.

May 21, 1991.

Charles E. Bobinis, Pittsburgh, Pa., for plaintiff.

Betsy W. Wertheimer, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

### D. BROOKS SMITH, District Judge.

The debtor, Specialty Plastic ("Specialty"), filed for protection under chapter 11 of the Bankruptcy Code on December 3, 1982. (Bankruptcy No. 82–3833). The Bankruptcy Court adopted a Plan of Reorganization on October 7, 1983. After the Bankruptcy Court adopted the Reorganization Plan, the Committee of Unsecured Creditors ("Committee") filed an Adversary Proceeding at No. 84–216. The Committee claimed that Eugene Doemling, the sole shareholder and President of Specialty, had usurped a corporate opportunity belonging to Specialty. According to the Committee, Doemling violated his fiduciary duty to Specialty by purchasing certain industrial equipment himself and leasing it to Specialty rather than by allowing Specialty to purchase the equipment. The Committee sought to recover the profits from the subsequent resale of the equipment, the rent Specialty had paid Doemling for use of the equipment, and the money Specialty had spent maintaining and servicing the equipment for the debtor's estate.

Before the Bankruptcy Court ruled on the Committee's complaint in Adversary No. 84–216, Eugene Doemling and his wife Regina filed for bankruptcy protection under Chapter 11. (Bankruptcy No. 88–2103). The Committee filed Adversary Proceeding No. 88–502 against the debtor's estate created by Eugene and Regina Doemling's bankruptcy. In this second adversary proceeding, the Committee asked the Court to find that Eugene Doemling's usurpation of Specialty's corporate opportunity constituted defalcation, and to declare the resulting debts nondischargeable.

Although these two adversary proceedings involved interrelated questions of fact and law, they were never formally consolidated. The two proceedings were, however, tried together and the Bankruptcy Court disposed of both in a single Memorandum Opinion. In that opinion, the Bankruptcy Court concluded that Eugene Doemling had usurped a corporate opportunity and ordered him to pay damages to the estate of debtor Specialty. The Bankruptcy Court further found that Doemling's usurpation of a corporate opportunity constituted defalcation within the meaning of the Bankruptcy Code and thus, declared the debt nondischargeable. 113 B.R. 915.

Doemling appealed both findings. These appeals, however, were not consolidated. One was filed in the Pittsburgh Division of the Western District of Pennsylvania (C.A. No. 90–1096) and one was filed in the Johnstown Division (C.A. No. 90–106J). Although the cases were never formally consolidated, both appellant Doemling and appellee Committee treated the cases as identical. They submitted identical briefs in both cases. We will therefore consider the matter consolidated for the purposes of this appeal.

## I. JURISDICTION & STANDING

Before we can address the underlying merits of the Bankruptcy Court's decision, we must first determine whether that Court had jurisdiction to hear the adversary proceedings that are the subject of this appeal. We must also determine whether the Committee had standing to prosecute the adversary proceedings below. We will address each issue in turn.

Appellant Doemling claims that the Reorganization Plan did not reserve the Bankruptcy Court's jurisdiction to hear the adversary proceedings. Appellee contends that Section 11(d) of the Plan of Reorganization expressly reserved the Court's jurisdiction to hear these adversary proceedings. We agree with appellee.

The Bankruptcy Court accepted and confirmed the debtor's Plan of Reorganization on October 9, 1983. The impact of this confirmation is governed by 11 U.S.C. § 1141, which provides that the provisions of the Plan bind the debtor and all creditors, irrespective of whether they accepted the plan. 11 U.S.C. § 1141(a); *In re Neptune World Wide Moving, Inc.*, 111 B.R. 457, 462 (Bkrtcy.S.D.N.Y.1990). As a gen-

eral matter, "once the bankruptcy estate is settled and transfer of the property is executed, 'the jurisdiction of the bankruptcy court over the property is generally said to terminate and does not follow it.'" *In re Service Decorating Co.*, 105 B.R. 859, 861 (N.D.Ill.1989); *quoting In re Samoset Assoc.*, 654 F.2d 247, 253 (1st Cir.1981).

■ However, subsection (b) of section 1141 of title 11 "allows the debtor to insert language in the plan and order confirming the plan which authorizes the bankruptcy court to retain jurisdiction over specified property which did not vest in the newly confirmed debtor." *In re Neptune, supra*, 111 B.R. at 462. Thus, a plan of reorganization may allow the Bankruptcy Court to retain jurisdiction over actions pending at the time of confirmation and actions commenced after the confirmation, and over any assets recovered as a result of these actions. *Id.*, *see also In re J.E. Jennings, Inc.*, 46 B.R. 167, 170 (Bkrtcy.E.D.Pa.1985). The ultimate resolution, then, of whether the Bankruptcy Court had jurisdiction over these adversary actions must be resolved by reference to the Plan of Reorganization.

Appellees have provided the Court with the last page of the Plan. Section 11 of the Plan provides that:

The court shall retain jurisdiction for the following purposes only:

a. Determination of all questions and disputes concerning a creditor's claim; and

b. Determination of all questions and disputes regarding payouts under the plan.

c. Enforcement of payments under the plan.

d. Turnover petitions under § 542 and any other action to recover assets for the estate.

Appellee contends that subsection (d) of section 11 gave the bankruptcy court jurisdiction to hear the adversary proceedings because they were actions to recover assets for the estate.

■ The underlying cause of action here—namely Doemling's usurpation of a corporate opportunity—accrued before the debtor filed the bankruptcy petition. Accordingly, this cause of action became part of the estate. 11 U.S.C. § 541. Subsection (d) of section 11 of the Plan explicitly provided that the Bankruptcy Court would retain jurisdiction to adjudicate "any ... action to recover assets of the estate." The instant case sought to recover Specialty's corporate assets which Doemling allegedly took by wrongfully usurping a corporate opportunity. Thus, it fell within the ambit of subsection (d), and the Bankruptcy Court properly exercised its jurisdiction.

The next question we must resolve is whether the appellee, the Committee, had standing to prosecute the adversary proceedings below. In a rambling, barely comprehensible litany of dates, appellant Doemling apparently argues that the Bankruptcy Court's appointment of the Committee in the reorganization plan did not comply with section 1123 of title 11. Doemling also argues that the subsequent appointment is void because the Bankruptcy Court did not retain jurisdiction to make any such appointments. Neither argument is persuasive.

Because appellant's arguments are based upon the chronological sequence of the events below, we begin our analysis of the standing issue with a brief and, hopefully, more understandable review of the events below.

As indicated above, the debtor, Specialty, filed a voluntary chapter 11 petition on December 3, 1982. One week later, on December 10, 1982, the Bankruptcy Court appointed the Committee. On January 18, 1983, the Bankruptcy Court entered an Order naming Joseph J. Bernstein of Bernstein and Bernstein as the attorney for the Committee.[1] The Court also entered an

---

1. These dates are taken from appellant Doemling's brief. Unfortunately, neither party has provided us with copies of these orders. We wish to note our disappointment with the manner in which this case has been presented to the Court. The record is nothing more than an incomplete mass of separate, uncollated documents. Such a deficiency is disturbing due to the rather lengthy and complex procedural history. Indeed, given the fact that many of appel-

Order barring claims after September 19, 1983. The Bankruptcy Court confirmed the Plan of Reorganization on October 7, 1983. Despite the order barring claims after September 19, 1983, the Bankruptcy Court retained jurisdiction to hear this and similar matters. On November 8, 1984, a year after the plan's confirmation, the Committee sought leave to file complaints on behalf of the debtor. The Bankruptcy Court granted the Committee such leave on December 3, 1984. Consequently, on July 3, 1985, the Committee filed a complaint seeking to recover damages stemming from Doemling's alleged usurpation of Specialty's business opportunity.

█ Appellant argues that the Committee did not have standing to bring the adversary proceedings below because the Bankruptcy Court did not appoint the Committee in accordance with the strictures of the Bankruptcy Code. 11 U.S.C. § 1123(b)(3)(B). Section 1123(b)(3)(B) governs the contents of reorganization plans and provides in pertinent part:

(b) subject to subsection (a) of this section, a plan may—

.        .        .        .        .

(3) provide for—

.        .        .        .        .

(B) the retention and enforcement by the debtor, by the trustee or by *a representative of the estate appointed for such purpose, of any such claim or interest.* (emphasis added)

Appellant apparently argues that because subsection (b)(3)(B) uses the word "appointed" in the past tense, that the Committee does not have standing to prosecute the adversary proceedings because the Court did not grant the Committee leave to bring the adversary proceedings until *after* the plan was confirmed. Implicit in this argument is the unspoken assertion that the Plan did not name the Committee as a representative of the estate to bring ac-

tions to enforce the plan after its confirmation. This argument is not persuasive.

First, even if we were to accept appellant's conclusion that the Committee had to be appointed prior to the confirmation of the Plan, which we do not, according to the chronology set forth in appellant's brief, the Bankruptcy Court first appointed the Committee on December 10, 1982, almost a year before the Plan was confirmed. Second, as indicated above, the Bankruptcy Court properly retained jurisdiction over any actions to retain assets of the estate. Implicit in this retention of jurisdiction is the power to appoint a representative to prosecute such an action.

█ Moreover, as a matter of law, we cannot accept appellant's construction of the language of section 1123(b)(3)(B). The fact that the statute allows actions to be brought by "a representative of the estate appointed for such a purpose ..." does not mean that the Bankruptcy Court must appoint the representative prior to confirming the plan. Indeed, there are no specific time constraints within the statute. Appellant's strained construction is unpersuasive. Thus, we find that the Court appointed the Committee in accordance with section 1123(b)(3)(B).

█ Having found that the Court appointed the Committee in accordance with the Code, we now consider the broader question of whether the Committee has standing to prosecute the underlying action. Section 1123(b)(3)(B) allows a party who is neither the debtor nor the trustee to bring a claim if the party can establish that (1) it was appointed and (2) that it is a representative of the estate. *In re Amarex, Inc.,* 96 B.R. 330, 334 (W.D.Okla.1989). We have already concluded that the Bankruptcy Court appointed the Committee properly. Therefore, we need only determine whether the Committee is a representative of the estate.

█ Most courts have adopted a case by case approach for determining whether a

lant's arguments are rooted in alleged procedural mistakes, we believe that minimum standards of professional diligence mandate a clearer presentation of the record. Counsels' failure to

observe these standards has made our job of reviewing the decision below more difficult than it needed to be.

claimant is a representative of the estate. *In re Sweetwater*, 884 F.2d 1323, 1326–1327 (10th Cir.1989); *In re Amarex*, 96 B.R. at 334. "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly the unsecured creditors." *In re Sweetwater*, 884 F.2d at 1327; *see also Amarex*, 96 B.R. at 334; *In re Kroh Bros. Development Co.,* 100 B.R. 487, 499–500 (Bkrtcy W.D.Mo. 1989), *In re Tennessee Wheel & Rubber Co.,* 64 B.R. 721, 725–26 (Bkrtcy M.D.Tenn. 1986), *aff'd,* 75 B.R. 1 (M.D.Tenn.1987). The concept of benefit to the unsecured creditors has been broadly defined and includes instances in which the successful prosecution of the suit would increase the assets of the estate. *Amarex,* 96 B.R. at 334, *In re Southern Industrial Banking Corp,* 59 B.R. 638, 641 (Bkrcty.E.D.Tenn. 1986). Also included in the concept of benefit to unsecured creditors is the increased likelihood of a successful reorganization. *Amarex,* 96 B.R. at 334–335.

In the instant case, the putative representative is the Committee of Unsecured Creditors. It can hardly be argued that a successful action by this representative would not inure to the benefit of Specialty's unsecured creditors. Accordingly, the Committee has satisfied both elements of standing pursuant to section 1123(b)(3)(B) and therefore had standing to prosecute the adversary proceedings below. Having found that the Bankruptcy Court retained jurisdiction to hear the proceedings below, and that the Committee had standing to bring them, we now turn to the merits.

## II. USURPATION OF A CORPORATE OPPORTUNITY

The substance of the adversary proceedings below involved a transaction in which appellant Doemling, bought certain equipment which he then leased to Specialty, the debtor. In Adversary No. 84–216, the Committee alleged that, by engaging in this transaction, Doemling usurped a corporate opportunity belonging to the debtor. Seeking to remedy this alleged usurpation of a corporate opportunity, the Committee also initiated Adversary No. 88–502, in which it claimed that this behavior amounted to defalcation within the meaning of the Code and therefore sought to have the debt arising out of adversary No. 84–216 declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4). We will address the claim of alleged usurpation of corporate opportunity first and then consider the issue of nondischargeability.

The factual circumstances surrounding the transaction at issue are as follows: Appellant Eugene Doemling incorporated the debtor, Specialty Plastics, Inc. in 1975 to manufacture and sell plastic containers to another business he owned, Imaging Systems, Corp. Doemling was the sole shareholder of Specialty and served on its Board of Directors. At the time Specialty declared bankruptcy in December of 1982, Doemling was also President of Specialty.

In early 1981, Doemling personally purchased a B75 and a B100 blow molder and related equipment at a purchase price of $34,500. Shortly after making this purchase, on February 25, 1981, Doemling leased both machines to Specialty at a monthly rental price of $600 each. The lease began on March 1, 1981 and expired on May 31, 1986. During the lease term, Specialty was responsible for the installation, maintenance and repairs made on the equipment.

In June of 1982, Doemling personally purchased a Uniloy 300 blow molder and related equipment for $65,000.00. Shortly after the purchase, Doemling leased the Uniloy 300 blow molder to Specialty. The lease agreement provided for a monthly rental payment of $1500.00 and ran from July 1, 1982 to June 30, 1987.

Doemling purchased all of the above equipment in his personal capacity; none of the leases was approved by Specialty's Board of Directors.

In December of 1982, Doemling unilaterally terminated Specialty's leases on the B100 blow molder and the Uniloy 300 blow molder. He sold the B100 blow molder to a third party for $65,000. He sold the Uniloy 300 to a third party for $72,500. These subsequent sales resulted in substantial

personal profit for Doemling. He had paid $34,500 for the B100 and B75 blow molders and sold the B100 alone for $65,000. The $72,500 resale price on the Uniloy 300 for which he had paid $65,000 represented a further gain of $7,500.

On May 1, 1984, Doemling unilaterally terminated Specialty's remaining lease on the B75 blow molder. He sold the B75 to a third party for $85,000 and thus realized a substantial profit.

During the course of the three leases, Specialty had paid Doemling a grand total of $24,300 in rental payments. Specialty had also expended an additional $23,331 for the installation, maintenance and repair of the three blow molders and related equipment.

After reviewing these facts, the Bankruptcy Court concluded that by purchasing the blow molders for his own personal gain, Doemling had usurped a corporate opportunity that properly belonged to Specialty. It therefore ordered Doemling to disgorge any profits he made through this opportunity. The Bankruptcy Court ordered Doemling to pay Specialty all the money he received in rent, all the profits he realized as a result of the sale of the three blow molders, and all the money Specialty had spent for the installation, repair and maintenance of the machines. The Bankruptcy Court further found that Doemling's actions with regard to the purchase and leasing of these machines constituted defalcation and therefore held that the Doemling's obligation to repay these monies was nondischargeable. Doemling appealed both rulings.

We will first consider whether Doemling usurped a corporate opportunity belonging to Specialty by purchasing the blow molder machines, and then consider whether such an action constitutes defalcation within the meaning of the Code.

The director of a corporation stands in a fiduciary position to a corporation. 15 Pa.C.S.A. § 511(d); *CST, Inc. v. Mark*, 360 Pa.Super. 303, 307–09, 520 A.2d 469, 471 (1987). As such, a director owes the corporation a duty of loyalty. *CST*, 520 A.2d at 471, *Hill v. Hill*, 279 Pa.Super.

154, 159–61, 420 A.2d 1078, 1081 (1980). This duty of loyalty requires a director to devote himself to corporate affairs with a view toward promoting the interests of the corporation. *CST*, 520 A.2d at 471; *Hill v. Hill*, 420 A.2d at 1081. Thus, directors "cannot, either directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed by their fellow shareholders." *Hill v. Hill*, 420 A.2d at 1081, *accord CST*, 520 A.2d at 471. As a result of this duty of loyalty, the law forbids a director from seizing a business opportunity which is within the scope of the corporation's activities for his own personal gain. *Hill*, 420 A.2d at 1081, *CST*, 520 A.2d at 471.

The question of what creates a corporate opportunity is a question of fact that is determined by reference to the circumstances surrounding the opportunity. *CST*, 520 A.2d at 471. Generally, a business opportunity will be deemed a corporate opportunity if the opportunity is in the same business, or a business related to that of the corporation. In its memorandum opinion, the Bankruptcy Court stated that "it is not disputed that the opportunity to purchase the B75, B100 and Uniloy 300 blow molders constituted 'corporate' opportunities with respect to Specialty." Mem.Op. at 920. Appellant does not dispute, as indeed he could not, that the opportunity to purchase the blow molders was a corporate opportunity. Therefore, the only question before this Court is whether appellant wrongfully usurped this opportunity.

The fiduciary obligation of a director is designed to protect creditors as well as stockholders. *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1005 (3d Cir.1973). Appellant, as a director of Specialty, "was duty bound to act 'with absolute fidelity to both creditors and shareholders'." *Brown v. Presbyterian Ministers Fund*, 484 F.2d at 1005 *quoting Drury v. Cross*, 74 U.S. (7 Wall) 299, 302, 19 L.Ed. 40. However, a corporate director may take personal advantage of a corporate opportunity "if the same is made

known to the shareholders, who consent ... and such action is not detrimental to the creditors of the corporation." *Hill v. Hill,* 420 A.2d at 1082–1083. In addition, a director may also avail himself of a corporate opportunity if the corporation is financially unable to seize the opportunity itself. *Id.* Appellant contends that he did not improperly usurp the opportunity because (1) he, the only shareholder of Specialty, knew and approved of his course of action and (2) because Specialty was financially unable to buy the machines itself. The Bankruptcy Court, however, found both exceptions inapplicable.

■ We agree with appellant Doemling that the Bankruptcy Court erred in finding that he had improperly usurped a corporate opportunity. Indeed, a close examination of the Bankruptcy Court's opinion reveals that its analysis confused the elements of the prohibition against usurping corporate opportunities, self-dealing and piercing the corporate veil.

First, it is quite clear that the facts of the instant case fall within the first exception to the prohibition against a director's seizure of a corporate opportunity. Although the Pennsylvania Supreme Court has held that the prohibition against usurping corporate opportunities applies in the context of a closely held corporation, *see Seaboard, Inc. v. Monaco,* 442 Pa. 256, 276 A.2d 305, 309 (1971), it is difficult to apply the doctrine in the instant case. Doemling was the *sole* shareholder of Specialty. This factor significantly changes our analysis simply because there were no other shareholders to whom Doemling owed a duty of disclosure and loyalty. "Because the doctrine of corporate opportunity is a rule of disclosure, application of the rule is inapposite where an action taken by [a sole shareholder] necessarily involves the knowledge and assent of the corporation." *In re Tufts Electronics, Inc.,* 746 F.2d 915, 917 (1st Cir.1984). (citations omitted).

Indeed, "an officer or director may seize a corporate opportunity if the same is made known to the shareholders, who consent to the acquisition of the opportunity by the individual officer or director instead of the corporation, and such action is not detrimental to the creditors of the corporation." *CST, Inc. v. Mark,* 520 A.2d at 471. Obviously, appellant consented to his own acquisition of the opportunity. Therefore, he can be held liable only if his action was detrimental to Specialty's creditors.

Whether appellant's actions were detrimental to the creditors of Specialty is a more problematic question. It is quite easy to argue, as the Committee does, and as the Bankruptcy Court found, that it would be better for Specialty's creditors if Specialty had an equity interest in the blow molders because there would be greater assets from which to satisfy Specialty's debts. We believe, however, this construes the concept of detriment to the creditors far too liberally.

■ Unfortunately, we have not found a Pennsylvania case that defines the kind of detriment to creditors that would make appellant liable under the corporate opportunity doctrine. The First Circuit has, however, analyzed this precise issue. *See In re Tufts Electronics, Inc.,* 746 F.2d 915, 916–918 (1st Cir.1984). *Tufts* also involved a creditor's attempt to get damages from a sole shareholder who had allegedly usurped a corporate opportunity. After noting that there had been disclosure to the shareholders, the First Circuit then considered the concept of detriment to the creditors. The Court held that "the rights of creditors are involved only where there has been prejudice to the creditors, and prejudice arises only where the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Tufts,* 746 F.2d at 917.

We find the First Circuit's standard of detriment to be far more realistic than that proposed by the Committee or the Bankruptcy Court. Their definition of detriment is far too broad. Under their definition, any action, even that which was disclosed and consented to, would be considered detrimental if the corporation may have benefited had the director not taken the opportunity himself. This definition would render meaningless the notion that a director may take an opportunity if he discloses his intent and obtains the shareholder's con-

sent. The definition enunciated in *Tufts* is far more attractive in that it preserves the core of the doctrine prohibiting director's from usurping corporate opportunity while allowing some flexibility in corporate transactions.

Appellant clearly is not liable under this standard. Obviously, his decision to spend his own money to purchase the blow molders himself did not cause Specialty to become insolvent. Nor, can his purchases be viewed as a fraudulent conveyance. Thus, his decision to purchase the blow molders was not so prejudicial to the creditors as to rise to the level of a breach of his fiduciary duty. We are mindful that the Committee represents the debtor's commercial creditors. As commercial creditors, they voluntarily entered into commercial relationships with the debtor. They could have analyzed debtor's assets before consummating the transactions. There is no evidence in the record that the creditors were defrauded concerning the ownership of the blow molders. Hence, we cannot find that Doemling's actions in purchasing the blow molders himself so prejudiced Specialty's creditors as to constitute an improper usurpation of a corporate opportunity.

■■■ Our conclusion that appellant did not usurp a corporate opportunity, does not however, absolve him of all liability. We indicated earlier that the Bankruptcy Court's opinion was flawed inasmuch as it confused the doctrines of corporate opportunity, self-dealing and piercing the corporate veil. Although we find that appellant did not act improperly in acquiring the blow molders in his personal capacity, the terms of the lease are still subject to strict standards of fairness.

Similarly, the Bankruptcy Court faulted the appellant for his failure to observe certain corporate formalities, such as obtaining the consent of other directors. The consent of other directors is relevant to both the issue of self-dealing and piercing the corporate veil. Unfortunately, the Bankruptcy Court did not address these theories separately. Therefore, it is necessary to remand the case to the Bankruptcy Court.

■■ On remand, the Bankruptcy Court is directed to consider whether the monthly rental fee, together with the maintenance costs charged by appellant, were unfair and therefore violative of the prohibition against self-dealing. In the event the Bankruptcy Court concludes that the rental and maintenance charges were in fact unfair, the Bankruptcy Court shall order appellant to disgorge only that amount of rent that was in excess of fair rental value.

We turn finally to the issue of defalcation and nondischargeability. Because we have vacated the Bankruptcy Court's judgment that appellant usurped a corporate opportunity, we must also vacate its judgment that such usurpation constituted defalcation within the meaning of the bankruptcy code. However, if the Bankruptcy Court finds that appellant's actions constituted improper self-dealing, it should also consider whether such self-dealing constitutes defalcation.

## III. CONCLUSION

We conclude that the Bankruptcy Court had jurisdiction to hear the adversary proceedings below and that the Committee had standing to bring these actions. However, we also conclude that appellant's action in buying the blow molders in his personal capacity was not a usurpation of a corporate opportunity. Therefore, we vacate that part of the judgment. We also vacate the Bankruptcy Court's determination that appellant's actions constituted defalcation and its consequential conclusion that appellant's debts are nondischargeable.

We will remand the matter to the Bankruptcy Court to consider whether: (1) appellant's actions constituted improper self-dealing; (2) appellant's failure to observe corporate formalities justifies piercing the corporate veil; and finally (3) whether any of these actions constituted defalcation thus mandating a finding that appellant's debts are nondischargeable. An appropriate order will be entered.

## ORDER

AND NOW, this 21st day of May, 1991, it is hereby

954

ORDERED, that the above-captioned case is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion. The Clerk is directed to mark these matters CLOSED.