649 A.2d 356

W. David PITTMAN et ux.

v.

AMERICAN METAL FORMING CORPORATION:
Roger Schlossberg, Trustee.

Misc. No. 5, Sept. Term, 1994.

Court of Appeals of Maryland.

Nov. 4, 1994.

**518**

Michael E. Marr, Baltimore, for appellant.

James P. Ulwick (Aron U. Raskas, Kramon & Graham, P.A., all on brief), Baltimore, for appellees.

Argued Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

This case involving alleged breaches of fiduciary duties by the sole shareholder of a corporation comes to us from the United States Court of Appeals for the Fourth Circuit, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, §§ 12–601 to 12–609 and Maryland Rule 8–305. The certified questions are:

"a. Whether a sole shareholder is liable to his corporation for usurpation of a corporate opportunity when, absent any demonstrated harm to creditors, he purchases property and equipment to be used by the corporation in his own name, and then leases the property and equipment to the corporation.

b. Whether a sole shareholder breaches a fiduciary duty to the corporation when he charges lease prices above fair market value for the property and equipment he leased to his corporation.

c. If a breach of fiduciary duty is found, is the statute of limitations tolled by the sole shareholder's control of the corporation."

This action arises out of a suit instituted by American Metal Forming Corporation (American) and the Trustee in Bankruptcy (Trustee) for Pittcon Industries, Inc. (Pittcon Industries) in the United States Bankruptcy Court for the District of Maryland against W. David Pittman, Jr. (Pittman) and Patrice Kelley Pittman (hereinafter referred to collectively as the Pittmans). American and the Trustee alleged that the Pittmans breached fiduciary duties owed to Pittcon Industries and sought the transfer of legal title to certain properties and equipment from the Pittmans to American.

At all pertinent times, Pittman was Pittcon Industries' sole shareholder and president and also served as one of its directors. For a brief period of time in the early 1980s, Pittman's wife, Patrice, also served as a director of Pittcon Industries.[1] In 1980, and again in 1985, the Pittmans purchased properties located in Prince George's County so that Pittcon Industries could expand its operations. To purchase these properties, Pittman obtained Industrial Revenue Bond (IRB) financing with Prince George's County as the secured party. Citizens Bank was the assignee on the 1980 purchase

---

[1]. Patrice Pittman was never a stockholder of the corporation, and although she was named as a party to the lawsuit, it appears that David Pittman handled all of the transactions at issue and that Patrice was merely a co-owner of the properties and equipment.

and Maryland National Bank was the assignee on the 1985 purchase. Pittman also used the IRB financing to purchase certain equipment for Pittcon Industries' use. To secure the loan amounts for the properties and equipment, Pittman pledged all of the assets of Pittcon Industries. The transactions were structured so that the properties and the equipment were titled to the Pittmans and were leased to Pittcon Industries pursuant to a long-term lease arrangement. Pittman structured the transaction in this manner based on advice from his accountant that it would increase the cumulative tax deductions for both Pittman and Pittcon Industries. The structure of the transactions was disclosed to the two banks and to Prince George's County, which constituted Pittcon Industries' primary creditors, and was reflected in the IRB documents.

Several years after the last real property purchase, an unrelated lawsuit was filed against Pittcon Industries and a one million dollar judgment was entered against it. As a result of the judgment, Pittcon Industries filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland. After the bankruptcy filing, Francis Hunt was appointed by court order to replace Pittman as CEO of Pittcon Industries. In March of 1990, after approval by the bankruptcy court, American bought all of Pittcon Industries' assets. On May 25, 1990, American filed suit against the Pittmans in the bankruptcy court alleging, *inter alia*, that the Pittmans breached a fiduciary duty owed to Pittcon Industries by purchasing the properties and equipment in the Pittmans' names and leasing the properties and equipment back to the corporation at above fair market rates. American sought the imposition of a constructive trust and the transfer to American of legal title in the properties and equipment that were purchased with the IRB funds. American also sought damages for the amount Pittcon Industries paid on the leases in excess of fair market value. On July 20, 1990, the Trustee filed a motion to intervene as a plaintiff in the suit against the Pittmans. On that same day, the Trustee

also filed a complaint against the Pittmans which was virtually identical to American's complaint.

Pursuant to a Report and Recommendation of the bankruptcy judge requesting that the adversary proceeding be withdrawn from the bankruptcy court, the case was referred to the United States District Court for the District of Maryland. In a non-jury trial the district court, (Hargrove, J.), held that Pittman breached a fiduciary duty owed to Pittcon Industries by usurping a corporate opportunity when he purchased the properties and equipment and then leased the properties and equipment to Pittcon Industries. *See American Metal Forming Corp. v. Pittman*, 135 B.R. 782 (Bankr.D.Md.1992). The district court entered an order granting American and the Trustee a constructive trust on the properties and equipment and ordered that legal title to the properties and equipment financed with the IRB funds be transferred to American. The court summarized its holding by stating that:

> "Pittman breached his fiduciary duty by engaging in both the IRB transactions and the subsequent lease agreements for his own personal benefit and to the detriment of Pittcon. The purchase of the properties and equipment were clearly corporate opportunities which Pittcon could have purchased on its own under the same favorable terms Pittman obtained for himself. Pittman came across those opportunities as President of Pittcon, and usurped the corporate opportunities for himself. He also breached his fiduciary duty to Pittcon when he caused Pittcon to enter into leases with himself at above the market rate on the [1985] property...."

*American Metal Forming Corp.*, 135 B.R. at 786. Subsequent to its decision, the district court referred the matter to a magistrate judge who assessed damages in the amount of $1,170,429.00 for the lease payments Pittcon Industries paid to Pittman in excess of fair market value. In a Final Judgment Order, the district judge adopted the magistrate judge's Report and Recommendation in full.

On December 14, 1992, the Pittmans filed an appeal from the Final Judgment Order to the United States Court of Appeals for the Fourth Circuit. Prior to considering the case, the Fourth Circuit certified three questions of law to this Court. We will address each certified question in turn.

**Question I. WHETHER A SOLE SHAREHOLDER IS LIABLE TO HIS CORPORATION FOR USURPATION OF A CORPORATE OPPORTUNITY WHEN, ABSENT ANY DEMONSTRATED HARM TO CREDITORS, HE PURCHASES PROPERTY AND EQUIPMENT TO BE USED BY THE CORPORATION IN HIS OWN NAME, AND THEN LEASES THE PROPERTY AND EQUIPMENT TO THE CORPORATION.**

For the reasons discussed below, we hold that a sole shareholder is not liable for the usurpation of a corporate opportunity when, in his own name, he purchases property and equipment for the corporation's use so long as no creditors are harmed.

Maryland has long held that directors and officers of a corporation stand in a fiduciary relationship to their corporation. *See Merchants Mortgage Co. v. Lubow*, 275 Md. 208, 215, 339 A.2d 664, 669 (1975)(discussing the fiduciary duty of officers and-directors); *Waller v. Waller*, 187 Md. 185, 194, 49 A.2d 449, 454 (1946)(discussing the fiduciary duty of directors); *see also* Roger A. Clapp, *A Fiduciary's Duty of Loyalty*, 3 Md.L.Rev. 221, 221 (1939). This Court "has ... recognized as a corollary. to the law of a corporate officer's and director's fiduciary duty, that, when presented with a business opportunity to fulfill a corporate purpose, [the director or officer] should take advantage of it, not for himself, but for the corporation." *Faraclas v. City Vending Co.*, 232 Md. 457, 463–64, 194 A.2d 298, 301 (1963); *see also Indurated Concrete Corp. v. Abbott*, 195 Md. 496, 503, 74 A.2d 17, 20 (1950)(noting that directors and officers must not " 'use their positions to advance their own individual interest as distinguished from

that of the corporation' ") (quoting *Cumb. Coal & Iron Co. v. Parish,* 42 Md. 598, 605–06 (1875)); 3 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 861.10, at 284 (perm. ed. rev. vol. 1994)(noting that the corporate opportunity doctrine generally prohibits "one who occupies a fiduciary relationship to a corporation from acquiring, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence"). The Supreme Court of Delaware explained the corporate opportunity doctrine in the oft-cited case of *Guth v. Loft, Inc.,* 23 Del.Ch. 255, 5 A.2d 503 (1939), as follows:

> "[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, [and] is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. And, if, in such circumstances, the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests and profits so acquired."

5 A.2d at 511.

In addition, it has been suggested that "while [the] law on corporate opportunity has developed around the duty owed by directors and officers, ... comparable duties and standards should be imposed when the party whose conduct is in question is a stockholder." *David J. Greene & Co. v. Dunhill International, Inc.,* 249 A.2d 427, 434 (Del.Ch.1968). This Court has "recognized the fiduciary obligation of majority shareholders, in certain matters, to minority shareholders." *Toner v. Baltimore Envelope Co.,* 304 Md. 256, 269, 498 A.2d 642, 647 (1985). We have held that "when majority stockholders use their voting power for their own benefit, for some

ulterior purpose adverse to the interests of the corporation and its stockholders . . ., they thereby become fiduciaries and violate their fiduciary obligations." *Cooperative Milk Service v. Hepner*, 198 Md. 104, 114, 81 A.2d 219, 224 (1951); *see Baker v. Standard Lime & Stone Co.*, 203 Md. 270, 283–84, 100 A.2d 822, 829 (1953). In *Allied Chemical & Dye Corporation v. Steel & Tube Co.*, 14 Del.Ch. 1, 120 A. 486 (1923), the Delaware Court of Chancery explained why majority shareholders who exercise control over a corporation owe a fiduciary duty to minority shareholders:

> "When . . . a majority of the voting power in the corporation join hands in imposing its policy upon all, it is beyond all reason . . . to take any view other than that they are to be regarded as having placed upon themselves the same sort of fiduciary character which the law impresses upon the directors in their relation to all the stockholders."

120 A. at 491; *see also Greene*, 249 A.2d at 435 (concluding that the rule prohibiting directors and officers from usurping corporate opportunities also prohibited a majority shareholder acting as a result of his control over a corporate function from usurping a corporate opportunity). Although in certain circumstances majority shareholders may owe fiduciary duties to minority shareholders of the corporation, this Court has stated that a shareholder does not owe a general fiduciary obligation to his corporation. *Morrison v. Savage*, 56 Md. 142, 144 (1881) (noting that although stockholders cannot withhold stock from the reach of creditors that have lawful claims against the corporation, "it by no means follows that [stockholders] are to be regarded as fiduciaries").

▮ The cases in which this Court has recognized a fiduciary duty owed by majority shareholders have been primarily in the context of a duty owed to minority shareholders. In the instant case, however, there are no minority shareholders that have been or could be injured and no creditors were prejudiced by the transactions at issue. To answer this certified question, we must determine whether Pittman, as sole shareholder of Pittcon Industries, can be liable for usurping a corporate opportunity properly belonging to Pittcon Industries

when no minority shareholders and no creditors were harmed by Pittman's actions. We hold that when, in circumstances such as the instant case, all of the shareholders participated in the transaction and no creditors were injured, there is no liability for the usurpation of a corporate opportunity.

In a case factually similar to the instant case, the United States Court of Appeals for the First Circuit refused to apply the corporate opportunity doctrine to a transaction between the corporation and the sole shareholder/president of the corporation. *See In re Tufts Electronics, Inc.,* 746 F.2d 915 (1st Cir.1984). In *Tufts,* the sole shareholder and president of Tufts Electronics, Inc. (Tufts) borrowed money to purchase investment property in New Hampshire where he could locate his corporation at reduced leasing costs. After purchasing the property in his own name, the sole shareholder/president leased the property to Tufts. Five hundred dollars of the lease payment was profit to the sole shareholder/president and the rest was used to meet the mortgage payments on the property. Tufts paid the taxes, utilities, insurance and maintenance of the premises. Subsequently, Tufts filed a petition for voluntary bankruptcy protection under Chapter 7 of the Bankruptcy Code. After the bankruptcy petition was filed, the Trustee in bankruptcy filed a complaint seeking the imposition of a constructive trust on the property because the sole shareholder/president bought and maintained the property with corporate funds. 746 F.2d at 916–17. The bankruptcy court, after determining that the sole shareholder/president usurped a corporate opportunity, imposed a constructive trust on the property. The district court affirmed the bankruptcy court's judgment but the First Circuit reversed the judgment. 746 F.2d at 917–18.

In reversing the district court, the First Circuit held that: "the corporate opportunity doctrine is a rule of disclosure ... [and] application of the [corporate opportunity doctrine] is inapposite where an action [by a sole shareholder] necessarily involves the knowledge and assent of the corporation [because the sole shareholder/president] cannot be accused

of defrauding or concealing information from himself in his role as sole corporate [officer and] director."

*Tufts*, 746 F.2d at 917 (citations omitted); *see also In re Gordon Car & Truck Rental, Inc.*, 65 B.R. 371, 376 (Bankr. N.D.N.Y.1986), *aff'd on other grounds*, 80 B.R. 12 (N.D.N.Y. 1987) (holding the corporate opportunity doctrine inapplicable because "[e]ven assuming that acquisition of the ... licenses was an opportunity properly belonging to [the corporation], the [three sole shareholders] cannot be accused of withholding or concealing information from *themselves* as sole shareholders and officers of the [corporation]") (emphasis in original).

The First Circuit in *Tufts* acknowledged that the sole shareholder/president and the corporation were two separate entities, but held that "absent some element of defrauding, [the sole shareholder/president] was not obliged, in every action he took, to prefer the corporation's interests to his own. No one could operate a corporation solely on such a basis ... [the sole shareholder/president's] behavior was entirely proper for the sole shareholder of a close corporation." *Tufts*, 746 F.2d at 917. Thus, the court concluded that the sole shareholder/president was not liable "under any theory of liability for breach of fiduciary duty." *Id.*; *see also Canion v. Texas Cycle Supply*, 537 S.W.2d 510, 513–14 (Tex.Ct.App.1976) (noting in dicta the "difficulty in understanding how an officer and director of a corporation, who is its sole shareholder, may appropriate a corporate opportunity of his solely owned corporation" and stating that "the only stockholder of the corporation ... obviously ratified his act as director in taking the corporate opportunity").

The United States Court of Appeals for the Fifth Circuit took an alternative approach in deciding whether the only two shareholders of a corporation, who were also officers and directors of the corporation, usurped a corporate opportunity when they negotiated a purchase option in their own names, rather than in the corporation's name. *See Matter of Safety Intern., Inc.*, 775 F.2d 660 (5th Cir.1985). The Fifth Circuit determined that, regardless of whether the purchase of the option constituted the usurpation of a corporate opportunity,

no cause of action could be maintained because the only two shareholders of the corporation ratified the transaction and no creditors were prejudiced. The court summarized the doctrine of ratification in sole shareholder cases where no creditors were harmed:

"[In cases involving the usurpation of a corporate opportunity], as with other acts involving interested directors, the shareholders of the corporation ordinarily can ratify the transaction ... [and] the ratification is valid unless the transaction itself violates a statute or public policy.... [E]ven when the transaction is detrimental to the corporation, no cause of action will lie if all of the shareholders have ratified the transaction.... [and] the rights of [the corporation's] creditors were not violated."

*Matter of Safety Intern., Inc.*, 775 F.2d at 662.

The United States District Court for the Western District of Pennsylvania also held that a sole shareholder, who was also the president and a director of the corporation, did not improperly usurp a corporate opportunity when he purchased equipment which he subsequently leased to the corporation and no harm to creditors resulted from the purchase. *See Committee of Unsecured Creditors v. Doemling*, 127 B.R. 945 (Bankr.W.D.Pa.1991). In applying Pennsylvania law, the court noted that a "corporate director may take personal advantage of a corporate opportunity 'if the [opportunity] is made known to the shareholders, who consent ... and such action is not detrimental to the creditors of the corporation.'" *Doemling*, 127 B.R. at 951–52 (quoting *Hill v. Hill*, 279 Pa.Super. 154, 420 A.2d 1078, 1082 (1980)). After commenting that "it is difficult to apply the [corporate opportunity] doctrine in the instant case [because the president] was the *sole* shareholder of [the corporation]," *Doemling*, 127 B.R. at 952 (emphasis in original), the court held that because there were no other shareholders to whom the president owed a duty of care and loyalty and because the corporate opportunity doctrine requires only disclosure to shareholders, the president "[o]bviously, ... consented to his own acquisition of the opportunity." *Id.* The *Doemling* court concluded that be-

cause the fiduciary duty prohibiting the usurpation of a corporate opportunity is designed to protect shareholders and creditors, a sole shareholder can be liable "only if his action was detrimental to [the corporation's] creditors." *Id.*

If we follow the First Circuit's rationale, no cause of action for the usurpation of a corporate opportunity will lie in the instant case. Pittman's purchase of the properties and equipment in his and his wife's names "necessarily involve[d] the knowledge and assent of the corporation." Thus, the disclosure requirement is met and no cause of action for the usurpation of a corporate opportunity can be maintained. *See Tufts,* 746 F.2d at 917. Likewise, if we follow the Fifth Circuit's rationale, because Pittman, as sole shareholder of Pittcon Industries, necessarily ratified the transaction, and no fraud or prejudice to Pittcon Industries' creditors resulted, no cause of action can be maintained for the usurpation of a corporate opportunity.

It should be noted that, under either analysis, a cause of action might lie if harm to creditors resulted from the sole shareholder's actions. *See, e.g., Doemling,* 127 B.R. at 952 (noting that a sole shareholder can be liable "if his action was detrimental to [the corporation's] creditors"); *Tufts,* 746 F.2d at 917 (noting that a constructive trust may be imposed when creditor's rights are prejudiced). Since Pittcon Industries filed for bankruptcy protection, it may be appropriate to discuss why the Fourth Circuit concludes that there was an absence of demonstrated harm to creditors. One definition of harm to creditors as espoused by the First Circuit in *Tufts* is that "prejudice arises where the transaction is a fraudulent conveyance or one which led to corporate insolvency."

No cause of action can be maintained in the instant case because no creditors were defrauded by the purchase of the properties or equipment and Pittcon Industries was not rendered insolvent because of those purchases. Prince George's County, the secured party on the IRB transactions, and Citizens Bank and Maryland National Bank, the two banks which were the assignees on the loans to the Pittmans,

approved the purchases in the Pittmans' names in advance. Additionally, any future creditors received prior notice of the fact that the properties and equipment were titled in the Pittmans' names and thus, did not rely on those assets as collateral for any security interests. *See Matter of Safety Intern., Inc.,* 775 F.2d at 662 (holding that no cause of action existed where the purchase option in dispute never appeared as an asset on the company's books and no creditors could have "relied on its existence in deciding to transact business with [the company]"); *Doemling,* 127 B.R. at 953 (noting that no creditors were defrauded because the creditors entered into the disputed transactions voluntarily and had the opportunity to examine the assets of the debtor prior to entering into the transactions). Furthermore, Pittcon Industries was solvent at the time the properties and equipment were purchased and became insolvent only after a one million dollar judgment was entered against it. Thus, the Pittmans' purchase of the property was not the cause of Pittcon Industries' insolvency. *See, e.g., Matter of Safety Intern., Inc.,* 775 F.2d at 662 (creditors had no cause of action because "[t]he challenged transaction did not cause [the corporation's] subsequent Chapter 11 filing ... the insolvency resulted from ... wholly unrelated economic conditions").

American and the Trustee cite no cases which hold that a sole shareholder is liable for the usurpation of a corporate opportunity of his solely owned corporation. Because Pittman was the sole shareholder of Pittcon Industries, the purchase of the properties and equipment were necessarily disclosed to and ratified by all shareholders of Pittcon Industries. In addition, the purchases resulted in no harm to Pittcon Industries' creditors. Thus, there is no liability for the usurpation of a corporate opportunity in the instant case. We emphasize that our answer to Question I is limited to transactions involving sole shareholders where no harm to creditors resulted. *Cf. Quinn v. Quinn,* 11 Md.App. 638, 648, 276 A.2d 425, 430 (1971) (the corporate entity is disregarded "when necessary to prevent fraud or to enforce a paramount equity");

*Lopez v. Lopez,* 250 Md. 491, 503, 243 A.2d 588, 595 (1968). Therefore, the answer to Question I is no.

## Question II. WHETHER A SOLE SHAREHOLDER BREACHES A FIDUCIARY DUTY TO THE CORPORATION WHEN HE CHARGES LEASE PRICES ABOVE FAIR MARKET VALUE FOR THE PROPERTY AND EQUIPMENT HE LEASED TO HIS CORPORATION.

■ The second certified question necessitates an inquiry into whether Pittman, as sole shareholder of Pittcon Industries, breached a fiduciary duty he owed to the corporation when he charged lease prices above fair market value for the properties and equipment he leased to Pittcon Industries. Where the sole shareholder of a corporation is paid above-market rate rent by a corporation[2] and no creditors are prejudiced by the lease, for the same reasons that led us to find no liability in Question I, we find no breach of a fiduciary duty by Pittman, the sole shareholder, in Question II.

■ We note that Question II does not ask this Court to consider whether Pittman breached a fiduciary duty he owed to Pittcon Industries in his capacity as a director and officer of the corporation and the Order of Certification from the United States Court of Appeals for the Fourth Circuit did not state that this Court could reformulate the questions certified. Absent such a provision in the Order of Certification, the Uniform Certification of Questions of Law Act does not authorize this Court to go beyond the questions certified by the certifying court. *See PSC v. Highfield Water Co.,* 293 Md. 1, 10, 441 A.2d 1031, 1035 (1982); *Krashes v. White,* 275 Md. 549, 557, 341 A.2d 798, 802 (1975); *but see Volkswagen of America v. Young,* 272 Md. 201, 205, 321 A.2d 737, 739 (1974) (where the certification order stated that "the phrasing of the certi-

---

2. We are not asked and we express no opinion as to whether subsequent creditors may demand that the corporation cease paying above-market rate rent.

fied question was not intended to restrict [the court's] consideration of the problems involved and the issues as [the court] perceive[s] them in light of the complaint in the case"). Consequently, we infer from the certified question that the Fourth Circuit wished this Court to confine its analysis to whether Pittman, as sole shareholder, breached a fiduciary duty to Pittcon Industries.[3]

In determining whether Pittman, as sole shareholder, is liable for breach of a fiduciary duty, we may look to analogous situations in other jurisdictions where a sole shareholder's acts, which may be detrimental to the corporation, have been held not to give rise to liability. For example, it has been held that shareholders, when acting unanimously, may ratify acts which amount to waste or gift of corporate assets. *See* 3 Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 982, at 678. In *L.R. Schmaus Co. v. C.I.R.*, 406 F.2d 1044 (7th Cir.1969), the court noted that an "action by a sole shareholder binds the corporation although the action is not authorized by the board of directors since

---

**3.** By restricting our decision on this matter to Pittman's status as sole shareholder, we in no way mean to suggest that Pittman, as a director and president of Pittcon Industries, may be liable for breach of a fiduciary duty by entering into the leaseback transaction with Pittcon Industries. A director of a corporation who enters into a transaction with the corporation must comply with the interested director statute codified in Maryland Code (1975, 1993 Repl.Vol.), Corporations and Associations Article, § 2–419. Section 2–419 provides that a "transaction between a corporation and any of its directors ... is not void or voidable solely because of ... [t]he common ... interest," so long as the fact of the common interest is disclosed to, and ratified by, either a disinterested majority of directors *or* a disinterested majority of shareholders. This statute is basically an assurance that minority shareholders are given the opportunity to approve or disapprove of transactions entered into by interested directors. In the instant case, there were no minority shareholders that would have been affected by Pittman's leaseback arrangement. In fact, Pittman was the only shareholder affected by the leaseback transaction. Thus, the danger of harm to the interests of minority shareholders that the statute is designed to protect is not present in the instant case. Because full disclosure and ratification were provided to Pittcon Industries' only shareholder, Pittman, Pittman's leaseback arrangement with Pittcon Industries may satisfy the purpose of the disclosure and ratification requirements of § 2–419.

only the shareholders have a beneficial interest in the corporation, other than its creditors." 406 F.2d at 1045. The court further noted that "if an officer of the company owns all the stock 'he may use the corporate assets as he sees fit and there can be no misappropriation of corporate assets by him.' " *Id.* (quoting Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1103 (1967)); *but see Doemling,* 127 B.R. at 953 (remanding the case to determine whether the sole shareholder's lease agreement with his corporation was fair to the corporation). In addition, it has been held that, although generally majority shareholders cannot make a gift of corporate property, "a person owning all of the legal and equitable interest in a corporation may give away the corporate assets." *See* 12B Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations,* § 5789, at 118 (citations omitted). Thus, because Pittman as the sole shareholder necessarily obtained unanimous ratification prior to entering into the leaseback transaction and no creditors were harmed, he is not liable for breach of a fiduciary duty owed to Pittcon Industries.

American and the Trustee contend that liability should be imposed upon Pittman based on the Court of Special Appeals' decision in *Independent Distributors, Inc. v. Katz,* 99 Md.App. 441, 637 A.2d 886, *cert. denied,* 335 Md. 697, 646 A.2d 363 (1994), which held that the majority shareholders' purchase of property and their subsequent leaseback to the corporation was a breach of a fiduciary duty. 99 Md.App. at 464, 637 A.2d at 897. The instant case is distinguishable from *Katz.* In *Katz,* the purchase of the property was made by the majority shareholders and minority shareholders' interests in the corporation were harmed as a result. In contrast, in the instant case, Pittman was the sole shareholder of Pittcon Industries and his purchase of the properties and the subsequent lease arrangement could not prejudice the interests in the corporation of non-existent minority shareholders. Thus, the rationale behind the *Katz* holding cannot be used to support a finding that Pittman breached a fiduciary duty in the instant

case. Therefore, for the same reasons we discussed in Question I, the answer to Question II is no.

## Question III. IF A BREACH OF FIDUCIARY DUTY IS FOUND, IS THE STATUTE OF LIMITATIONS TOLLED BY THE SOLE SHAREHOLDER'S CONTROL OF THE CORPORATION.

Because we have established that Pittman is not liable for usurping a corporate opportunity or for breach of a fiduciary duty by leasing the properties and equipment to Pittcon Industries at above market rates, we need not answer Certified Question III. Whether the statute of limitations was tolled by Pittman's control of the corporation as its sole shareholder would not be determinative in the instant case because no cause of action can be maintained against Pittman. Pursuant to Md.Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 12–601, this Court may answer questions certified to it if the questions "may be determinative of the cause then pending in the certifying court." *See United States v. Searle*, 322 Md. 1, 6, 584 A.2d 1263, 1265 (1991). If the answer to one question has made the answer to another question no longer determinative, this Court has declined to reach the unnecessary question. *Id.; see, e.g., Mut. Fire, Marine & Inland Ins. v. Vollmer*, 306 Md. 243, 245, 508 A.2d 130, 131 (1986).

*CERTIFIED QUESTIONS ANSWERED AS SET FORTH ABOVE. COSTS TO BE PAID BY APPELLEE.*