808 A.2d 508

Donato PISELLI, et al.,

v.

75th STREET MEDICAL, et al.

Misc. No. 2 Sept. Term 2001.

Court of Appeals of Maryland.

Oct. 8, 2002.

Richard S. Phillips (Walsh & Phillips, P.A., on brief), Easton, for appellants.

Kurt D. Karsten (Curtis H. Booth of Cowdrey, Thompson & Karsten, P.A., on brief), Annapolis, for appellees.

BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

This case comes to us by a Certified Question from the United States Court of Appeals for the Fourth Circuit, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1998 Repl.Vol.), §§ 12–601 through 12–613 of the Courts and Judicial Proceedings Article, and Maryland Rule 8–305. The question of Maryland law set forth in the Certification Order is as follows:

"[W]hether, when a claim is brought by parents on behalf of a child who was injured before reaching age eleven, the three-year statute of limitations of section 5–109(a)(2) [of the Courts and Judicial Proceedings Article] begins to accrue upon the discovery of the injury by the child or upon discovery of the injury by the parents."[1]

---

1. Section 5–109 of the Courts and Judicial Proceedings Article states:

" § 5–109. Actions against health care providers.

(a) *Limitations.*—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date the injury was discovered.

(b) *Actions by claimants under age 11.*—Except as provided in subsection (c) of this section, if the claimant was under the age of 11 years at the time the injury was committed, the time limitations prescribed in subsection (a) of this section shall commence when the claimant reaches the age of 11 years.

(c) *Exceptions to age limitations in certain actions.*—(1) The provisions of subsection (b) of this section may not be applied to an action for damages for an injury:

(i) To the reproductive system of the claimant; or

(ii) Caused by a foreign object negligently left in the claimant's body.

(2) In an action for damages for an injury described in this subsection, if the claimant was under the age of 16 years at the time the injury was committed, the time limitations prescribed in subsection (a) of this section shall commence when the claimant reaches the age of 16 years.

(d) *Effect of filing claim.*—For the purposes of this section, the filing of a claim with the Health Claims Arbitration Office in accordance with § 3–2A–04 of this article shall be deemed the filing of an action.

(e) *Effect of other provisions.*—The provisions of § 5–201 of this title that relate to a cause of action of a minor may not be construed as limiting the application of subsection (b) or (c) of this section.

The Certification Order acknowledged "that the Court of Appeals of Maryland may reformulate this question." *See also* § 12–604 of the Courts and Judicial Proceedings Article, providing that "[t]he Court of Appeals of this State may reformulate a question of law certified to it." The Certification Order also indicated that the term "discovered" in § 5–109(a)(2) referred to Maryland's traditional "discovery rule," under which, in the language of the United States Court of Appeals, "a statute of limitations begins to accrue when a person acquires knowledge sufficient to cause a reasonable person to make an inquiry that, if pursued with reasonable diligence, would have disclosed the existence of the allegedly negligent act and harm." *See Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 441–447, 749 A.2d 796, 799–802 (2000), cited by the federal court in its Certification Order.

 We shall reformulate the certified question and shall hold that, in light of Article 19 of the Maryland Declaration of Rights, in an action under § 5–109(a) by or on behalf of a claimant who was a minor at the time the injury occurred, the time limitations prescribed in § 5–109(a) shall commence running when the claimant reaches the age of 18 years.

## I.

On August 2, 1993, Christopher Piselli, who was at that time 10 years and 11 months old, was on vacation in Ocean City, Maryland, with his family. That morning, Christopher and his father went fishing at a pier in Ocean City for approximately three hours. When they left the pier and were walking back toward their car, Christopher's father noticed that his son was limping and that, as his son was walking, he was throwing out his left leg in an unusual circular, outward motion. Christopher also complained of a great deal of pain in his left hip

---

(f) *Application.*—Nothing contained in this section may be construed as limiting the application of the provisions of:

(1) § 5–201 of this title that relate to a cause of action of a mental incompetent; or

(2) § 5–203 of this title."

area. Christopher's father then took Christopher to the 75th Street Medical Center, located in Ocean City, for a medical examination.

At the 75th Street Medical Center, Dr. Lynn Yarborough examined Christopher, and she ordered a series of hip X-rays to be taken by the X-ray technician at the Medical Center. Based upon her examination of Christopher and the X-rays, Dr. Yarborough informed Christopher's father that Christopher had most likely suffered a pulled hamstring muscle. She prescribed a muscle relaxant and ibuprofen for Christopher, and she instructed Christopher's father to use a warm compress on Christopher's leg. Dr. Yarborough also directed that Christopher should return to the Medical Center in two to four days if his condition did not improve.

Three days later, on August 5th, Christopher further injured his left leg while standing in shallow water at the edge of the ocean, when a wave broke near him and caused him to fall over. Christopher was transported by ambulance from the beach to a nearby hospital, and he was ultimately taken to Johns Hopkins Hospital in Baltimore. Christopher had suffered a slipped capital epiphysis at the top of his left leg, a condition in which the capital epiphysis of the femur moves out of place. At Johns Hopkins, the fracture was placed in traction and then pinned. A medical expert further explained at the trial of this case that a slipped capital epiphysis is a "slippage through the growth plate of the ball of the hip joint," the growth plate being made of "cartilage and relatively soft." During August and September 1993, Christopher was required at all times to use crutches, and he needed to restrict his mobility so as to facilitate the healing process in his leg. By the beginning of October, Christopher was able to use the crutches on a more intermittent basis.

Subsequently, in the fall of 1993, Christopher's hip developed a condition referred to as avascular necrosis, a complication of the injury which he had suffered. Avascular necrosis is the "pathologic death of one or more cells, or a portion of tissue or organ, resulting from irreversible damage ... due to

deficient blood supply." *See* STEDMAN'S MEDICAL DICTIONARY 1185 (27th ed.2000). In Christopher's case, the upper portion of his left femur ceased growing as a result of avascular necrosis. This condition began to create a significant gap between the length of his right leg and the length of his left leg. At the recommendation of Christopher's doctors, a procedure was performed to kill the growth plate in Christopher's right leg in order to help alleviate the growth disparity between the two legs. Following this surgery, Christopher's left hip remained malformed because of necrosis and arthritis in the joint. Christopher's mobility and his ability to participate in a range of activities were limited. Christopher's physicians informed his parents that his disability would last throughout his lifetime and that Christopher would need a series of operations.

In 1998, the Pisellis filed a medical malpractice claim in the Health Claims Arbitration Office of Maryland, pursuant to § 3–2A–02 of the Courts and Judicial Proceedings Article. Thereafter, the parties elected to waive arbitration, and the Pisellis filed this medical malpractice action. The facts concerning the judicial proceedings are recited in the United States Court of Appeals' Certification Order as follows (footnotes omitted):

"On July 24, 1998, Donato and Marie Piselli filed this medical malpractice action, individually and as Christopher's 'next friends,' against Dr. Yarborough and the Medical Center. The action was filed in the United States District Court for the District of Maryland and was referred to Magistrate Judge Paul W. Grimm for all proceedings, including a jury trial.

"Prior to trial, Dr. Yarborough and the Medical Center moved for summary judgment based on the affirmative defense of the statute of limitations. The district court found that there was a genuine factual dispute as to when Christopher's injury was or should have been discovered, and the court therefore denied the motion for summary judgment and put these questions to the jury.

"The jury returned a verdict in favor of Dr. Yarborough and against the Medical Center, finding that the Medical Center had deviated from the accepted standard of care in its treatment of Christopher and that this deviation was the proximate cause of Christopher's injury on August 5, 1993. The jury awarded damages of $410,000 to Christopher and $28,000 to Donato and Marie Piselli. By answer to the special interrogatories, the jury also found that Donato and Marie Piselli discovered Christopher's injury in November 1993 and that Christopher did not discover his injury until 1999, after this action was filed.

"Following the jury's verdict, the district court ruled as a matter of law that this action is time-barred, holding that the statute of limitations in Md.Code Ann., Cts. & Jud. Proc. § 5–109 began to accrue in November 1993, when Christopher's parents had knowledge of his injury. Therefore, the court entered judgment in favor of Dr. Yarborough and the Medical Center.

\* \* \*

"It is undisputed that Christopher was not yet eleven years old at the time the injury was committed in August 1993. It is also undisputed that this action, commenced in July 1998, was filed within '[f]ive years of the time the injury was committed,' § 5–109(a)(1). The relevant question, therefore, is whether this action is time-barred as not filed within '[t]hree years of the date the injury was discovered' as required by section 5–109(a)(2), the answer to which, in this case, depends upon whether the referenced 'discovery' is that of the parents or that of the child.

"No Maryland case addresses the question of whether, when a claim is brought by parents on behalf of a child who was injured before reaching age eleven, the three-year statute of limitations of section 5–109(a)(2) begins to accrue upon discovery of the injury by the child or upon discovery of the injury by the parents. The answer to this question is dispositive here because the action was filed within three years of the date the injury was discovered by Christopher,

but more than three years after discovery of the injury by Christopher's parents."

The plaintiffs have been designated as the appellants in this Court, and the defendants have been designated as the appellees.

## II.

Expressly invoking this Court's statutory authority to reformulate the certified question, the parties' arguments before us range beyond the certified question to a considerable degree.

The plaintiffs' initial argument is "that Maryland law should be interpreted to always provide a minor five years to bring a Medical Malpractice claim, and . . . that a rational reading of the law reveals that this is what the Maryland Legislature truly intended when it enacted § 5–109. . . ." (Appellants' brief at 7). Second, largely accepting the legal issue as framed by the certified question, the plaintiffs alternatively contend that, under § 5–109, the parents' knowledge is not imputed to the minor child, and that the three-year period in § 5–109(a)(2) does not run from the parents' discovery of the child's injury. Finally, the plaintiffs argue that the United States District Court's interpretation of § 5–109 makes the statute unconstitutional under the Privileges and Immunities, Due Process, and Equal Protection Clauses of the Fourteenth Amendment,[2] and under Articles 19 and 24 of the Maryland Declaration of Rights.[3]

---

**2.** Section 1 of the Fourteenth Amendment to the Constitution of the United States provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**3.** Article 19 of the Maryland Declaration of Rights provides:

"**Article 19.** · **Remedy for injury to person or property.**

The defendants initially disagree with the portion of the Certification Order which indicates that § 5–109(a)(2) of the Courts and Judicial Proceedings Article reflects the traditional Maryland "discovery rule," as discussed in *Lumsden v. Design Tech Builders, Inc., supra,* 358 Md. at 441–447, 749 A.2d at 799–802. The defendants argue that "the Fourth Circuit's formulation of the Certified Question[, which] assumes that § 5–109(a) ... incorporates the traditional common law 'discovery rule' articulated in various Maryland cases," is erroneous and that discovery for purposes of § 5–109(a) "occurred on August 5th, at the beach, and must be deemed, as a matter of law, to have been discovered by parents and child at virtually the same moment." (Appellees' brief at 9–10). The defendants also argue that the jury's determination of discovery by Christopher was erroneous, and that "the orthopedic injuries attributed to the negligence of the Defendants were open and obvious to everyone, including Christopher, as of the time Christopher was taken for treatment to" the hospital on August 5, 1993. (*Id.* at 12). Next, the defendants argue that, even if § 5–109(a)(2) refers to the traditional Maryland discovery rule, it is the discovery by the parents and not the child which triggers the running of limitations. Finally, the defendants argue that § 5–109, as construed by the United States District Court, violates neither the Maryland Constitution nor the United States Constitution because the statute has "a rational basis" and is "rationally related to a legitimate government interest." (*Id.* at 27). The defendants do not specifically address the plaintiffs' argument based on Article 19 of the Maryland Declaration of Rights, and at oral argument

---

"That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."
Article 24 of the Maryland Declaration of rights provides:
"**Article 24. Due Process.**
"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

before us, the defendants' counsel stated that he "has no response" to the Court's questions concerning the validity under Article 19 of § 5–109 as applied to a minor's claim.

### III.

Some of the parties' arguments exceed the scope of our authority under the Maryland Uniform Certification of Questions of Law Act, and some others can be disposed of briefly.

### A.

█ The plaintiffs' contentions that the United States District Court's interpretation of § 5–109 renders that statute unconstitutional under the Privileges and Immunities, Due Process, and Equal Protection Clauses of the Fourteenth Amendment, do not present issues cognizable under the Certification statute. We have consistently held that "the Maryland Uniform Certification of Questions of Law Act ... does not authorize this Court to decide questions of federal constitutional law in a certified question case." *Telnikoff v. Matusevitch,* 347 Md. 561, 578–579 n. 15, 702 A.2d 230, 239 n. 15 (1997). *See Widgeon v. Eastern Shore Hosp. Center,* 300 Md. 520, 536–537, 479 A.2d 921, 929 (1984); *Mercantile–Safe Deposit and Trust Co. v. Purifoy,* 280 Md. 46, 54, 371 A.2d 650, 655 (1977); *Guy v. Director,* 279 Md. 69, 73, 367 A.2d 946, 949 (1977).

█ The above-cited holdings involved the Maryland Uniform Certification of Questions of Law Act prior to its revision by Ch. 344 of the Acts 1996, and were based upon the language in former § 12–601 authorizing this Court to answer "a question of law of this State." Although this reference to "a question of law of this State" was deleted in the 1996 revision of the statute, we adhere to our cases holding that federal law issues are not encompassed by the Certification Act.

Section 12–603 of the revised Certification Act, enacted by Ch. 344 of the Acts of 1996, now provides:

> **" § 12–603. Power to answer.**
>
> "The Court of Appeals of this State may answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State."

The reference to there being no appellate decision or enactments *of this State* indicates that our authority under § 12–603 is limited to questions of non-federal Maryland law. Such interpretation is also indicated by the use of the word *controlling*. This Court's decisions on questions of federal law are obviously not "controlling" with regard to federal courts or courts of other states. The only court having the authority to issue decisions on federal law which are "controlling" upon the courts throughout the country is the Supreme Court of the United States.

Moreover, the report of the House Judiciary Committee on House Bill 1450, which became Ch. 344 of the Acts of 1996, contained in the file of the Department of Legislative Reference, indicates that, except for certain changes expressly enumerated by the Committee, the new version of the Maryland Uniform Certification of Questions of Law Act was intended to be substantively the same as the former version. None of the changes enumerated by the Committee suggested that we could answer a federal law issue in a certified question case.[4] In addition, the *Prefatory Note and Comments* by the

---

4. On the other hand, the authority "to reformulate a question of law" (House Judiciary Committee Report on House Bill 1450, at 2), was an enumerated change in the law brought about by House Bill 1450. Prior to the 1996 revision, this Court could not reformulate the certified question unless the certifying court expressly authorized us to do so. *Pittman v. American Metal*, 336 Md. 517, 530–531, 649 A.2d 356, 363 (1994); *PSC v. Highfield Water Co.*, 293 Md. 1, 10, 441 A.2d 1031, 1035

National Conference of Commissioners on Uniform State Law, on the revised Uniform Certification of Questions of Law Act (1995), refers only to state law or tribal law and, as an option, to Canadian or Mexican law.

■ Finally, the purpose of the Uniform Certification of Questions of Law Acts is to obtain authoritative decisions concerning the law of a particular *state* or tribe, in order to assist federal courts, Native American tribal courts, and state appellate courts in other states in their decision-making processes. The purpose is not to have a court in one jurisdiction advise a court in another jurisdiction on a federal law issue, when both courts have equal authority and equal obligations to interpret and apply federal law. Consequently, the Fourteenth Amendment issues raised by the plaintiffs are not cognizable under the Certification Act.

### B.

■ Similarly, the defendants' argument that Christopher "discovered" his injury in 1993, rather than 1999 as found by the jury and set forth in the Certification Order, is beyond the scope of the Certification statute. While this issue is no longer material in light of our holding under Article 19 of the Maryland Declaration of Rights, we do point out that, under the Certification statute, the answering court is bound by the facts as agreed by the parties or stated in the Certification Order. Section 12–606 of the statute provides as follows:

"**12–606. Contents of certification order.**

"(a) *In general.*—A certification order shall contain:

(1) The question of law to be answered;

(2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose;

(3) A statement acknowledging that the Court of Appeals of this State, acting as the receiving court, may reformulate the question; and

---

(1982); *Toll v. Moreno,* 284 Md. 425, 437, 397 A.2d 1009, 1015 (1979); *Krashes v. White,* 275 Md. 549, 557, 341 A.2d 798, 802 (1975).

(4) The names and addresses of counsel of record and parties appearing without counsel.

(b) *Where parties unable to agree upon statement of facts.*—If the parties cannot agree upon a statement of facts, the certifying court shall determine the relevant facts and state them as a part of its certification order."

*See Reed v. Campagnolo,* 332 Md. 226, 228, 630 A.2d 1145, 1146 (1993) ("Under the Act, this Court considers 'only questions of state law, not questions of fact,'" quoting *Mercantile Safe Deposit and Trust Co. v. Purifoy, supra,* 280 Md. at 54, 371 A.2d at 655); *Food Fair Stores v. Joy,* 283 Md. 205, 219 n. 7, 389 A.2d 874, 882 n. 7 (1978) ("[W]e do not evaluate or weigh the evidence, but instead accept the statement of facts submitted by the certifying court").

## C.

Apart from the plaintiffs' argument based on Article 19 of the Maryland Declaration of Rights, the parties' remaining arguments do not require extensive discussion.

We find nothing in the statutory language or the legislative history of § 5–109 to support the defendants' contention that the language of § 5–109(a)(2), providing three years from discovery for bringing an action, does not reflect the traditional Maryland "discovery rule." Instead, we fully agree with the United States Court of Appeals for the Fourth Circuit that the unambiguous language of § 5–109(a)(2) does embody the traditional Maryland "discovery rule" as set forth in our cases. *See, e.g., Bragunier v. Catholic University,* 368 Md. 608, 627–632, 796 A.2d 744, 755–758 (2002); *Lumsden v. Design Tech Builders, Inc., supra,* 358 Md. at 441–447, 749 A.2d at 799–802; *Jones v. Hyatt,* 356 Md. 639, 648–651, 741 A.2d 1099, 1103–1105 (1999); *Doe v. Maskell,* 342 Md. 684, 690–691, 679 A.2d 1087, 1090 (1996), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997); *Poffenberger v. Risser,* 290 Md. 631, 634–638, 431 A.2d 677, 679–681 (1981).

Our holding, based on Article 19 of the Declaration of Rights, that the time periods in § 5–109(a) do not begin

running against a child's claim until the child reaches the age of 18, removes any need to resolve the parties' statutory interpretation arguments. Similarly, we need not reach the plaintiffs' argument that § 5–109, as construed by the federal District Court, violates Article 24 of the Maryland Declaration of Rights. *See Pittman v. American Metal*, 336 Md. 517, 533, 649 A.2d 356, 364 (1994) (In a certified question case, when "the answer to one question has made the answer to another question no longer determinative, this Court has declined to reach the unnecessary question"); *United States v. Searle*, 322 Md. 1, 6, 584 A.2d 1263, 1265 (1991); *Mutual Fire, Marine & Inland Ins. v. Vollmer*, 306 Md. 243, 245, 508 A.2d 130, 131 (1986).

## IV.

### A.

As recently discussed in *Dua v. Comcast Cable*, 370 Md. 604, 616, 805 A.2d 1061, 1068 (2002), "Article 19 of the Maryland Declaration of Rights . . . guarantees a 'remedy by the course of the Law of the land, . . . according to the Law of the land,' for 'every [person], for any injury done to him [or her] in his [or her] person or property.' " Article 19 was part of the original Maryland Declaration of Rights adopted in 1776, although it was then designated as Article 17 of the Declaration of Rights. Except for one word, the wording today is identical to the 1776 wording.[5] All of the original state constitutions adopted at the time of the Revolutionary War, except Virginia's and North Carolina's, contained provisions like Article 19. While the United States Constitution contains no comparable provision, today the constitutions of 39 states have clauses similar to Article 19. These provisions, often referred to as "Remedy Clauses" or "Open Courts Clauses" or "Access to Courts Clauses," are based on Chapter

---

5. Today's language refers to "every man," whereas the 1776 language referred to "every freeman." In light of the Equal Rights Amendment, which is Article 46 of the Declaration of Rights, adopted in 1972, the provision should be read as "every person."

40 of the Magna Carta or, more particularly, Lord Coke's interpretation of Chapter 40.[6] For a review of the history, purpose, interpretation, and application of such clauses, *see, e.g., Smothers v. Gresham Transfer, Inc.,* 332 Or. 83, 23 P.3d 333 (2001); Comment, *The Kansas Remedy by Due Course of Law Provision: Defining a Right to a Remedy,* 47 Kan. L.Rev. 655 (1999); Hoffman, *By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions,* 74 Or. L.Rev. 1279 (1995); Schuman, *The Right To A Remedy,* 65 Temp. L.Rev. 1197 (1992); Schuman, *Oregon's Remedy Guarantee,* 65 Or. L.Rev. 35 (1986); Linde, *First Things First: Rediscovering The States' Bills of Rights,* 9 U. Balt. L.Rev. 379, 385 (1980); Perry and Cooper, *Sources of Our Liberties* 341–351 (rev. ed. 1990); Stringham, *Magna Carta Fountainhead of Freedom* 54–57 (1966); Thorne, Dunham, Kurland, and Jennings, *The Great Charter* 52–61 (1965); Thompson, *Magna Carta* 97–99, 364–365 (1948). *See also* Everstine, *The General Assembly of Maryland 1634–1776* at 566 (1980).

An examination of our opinions concerning Article 19 discloses that the constitutional provision generally protects two interrelated rights: (1) a right to a remedy for an injury to one's person or property; (2) a right of access to the courts. Furthermore, as we stated in *Doe v. Doe,* 358 Md. 113, 127–128, 747 A.2d 617, 624 (2000), "Article 19 insures that rights belonging to Marylanders are 'not illegally or arbitrarily denied by the government,'" quoting *State v. Board of Education,* 346 Md. 633, 647, 697 A.2d 1334, 1341 (1997).

Some specific applications of this constitutional protection are as follows. We have held that "[i]t is a 'basic tenet, expressed in Article 19 of the Maryland Declaration of Rights, that a plaintiff injured by unconstitutional state action should have a remedy to redress the wrong.'" *Dua v. Comcast Cable, supra,* 370 Md. at 644, 805 A.2d at 1061, quoting *Ashton v. Brown,* 339 Md. 70, 105, 660 A.2d 447, 464–465

---

**6.** Article 24 of the Maryland Declaration of Rights, which also contains the phrase "Law of the land," is based upon Chapter 39 of the Magna Carta.

(1995). *See, e.g., Robinson v. Bunch,* 367 Md. 432, 444, 788 A.2d 636, 644 (2002); *Doe v. Doe, supra,* 358 Md. at 128, 747 A.2d at 624; *Clea v. City of Baltimore,* 312 Md. 662, 680–681, 541 A.2d 1303, 1312 (1988); *Weyler v. Gibson,* 110 Md. 636, 653–654, 73 A. 261, 263 (1909). Where a person clearly has a right to money or property under a statute or common law principle, and no statute specifically provides for a remedy, Article 19 guarantees a common law remedy to enforce the right. *Robinson v. Bunch, supra,* 367 Md. at 444, 788 A.2d at 644. The principle that one has a Maryland constitutional right to judicial review of adjudicatory administrative decisions is based, in part, upon Article 19. *State v. Board of Education, supra,* 346 Md. at 647, 697 A.2d at 1341. *See Board of License Comm. v. Corridor,* 361 Md. 403, 415, 761 A.2d 916, 922 (2000). Article 19 ordinarily precludes retrospective legislation abrogating accrued causes of action. *Dua v. Comcast Cable, supra,* 370 Md. at 645, 805 A.2d at 1085.

 Apart from these types of specific holdings with respect to Article 19, the constitutional provision generally prohibits unreasonable restrictions upon traditional remedies or access to the courts but allows the Legislature, pursuant to its authority to change the common law or statutory provisions,[7] to enact reasonable restrictions upon traditional remedies or access to the courts. *Johnson v. Maryland State Police,* 331 Md. 285, 297, 628 A.2d 162, 168 (1993) ("Article 19 does guarantee access to the courts ... [but] a 'statutory restriction upon access to the courts violates Article 19 only if the restriction is unreasonable,'" quoting *Murphy v. Edmonds,* 325 Md. 342, 365, 601 A.2d 102, 113 (1992)).

 Several restrictions upon traditional remedies or access to the courts have been upheld under Article 19 as reasonable. For example, we have held that Article 19 does not require the recognition of a new tort cause of action which has never previously been recognized in Maryland, *Doe v. Doe, supra,* 358 Md. at 128, 747 A.2d at 625. This Court has

---

7. Article 5 of the Declaration of Rights.

indicated that the Legislature may reasonably limit the amount of damages recoverable in tort cases for non-economic damages without violating Article 19, *Murphy v. Edmonds, supra,* 325 Md. at 366, 601 A.2d at 114. The Court has also held that "the Legislature may ordinarily substitute a statutory remedy, including a statutory administrative and judicial review remedy, for a common law remedy without violating Article 19 of the Declaration of Rights," *Robinson v. Bunch, supra,* 367 Md. at 446–447, 788 A.2d at 645. Article 19 does not prohibit the Legislature from requiring an arbitration proceeding prior to the filing in court of a medical malpractice suit, *Attorney General v. Johnson,* 282 Md. 274, 298–299, 385 A.2d 57, 71, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

In addition, the application of several traditional immunities from suit has been upheld in the face of Article 19 challenges. *See Renko v. McLean,* 346 Md. 464, 484, 697 A.2d 468, 478 (1997) (parent-child immunity); *Johnson v. Maryland State Police, supra,* 331 Md. at 297, 628 A.2d at 168 (State sovereign immunity); *Sanner v. Trustees of Sheppard & Enoch Pratt Hospital,* 278 F.Supp. 138, 141 (D.Md.), *affirmed,* 398 F.2d 226 (4th Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 453, 21 L.Ed.2d 443 (1968) (charitable immunity). On the other hand, we have held that Article 19 precludes the Legislature from immunizing from suit both the government and the government official involved, at least when the cause of action is based upon a violation of state constitutional rights. *Ashton v. Brown, supra,* 339 Md. at 105–106, 660 A.2d at 464–465; *Clea v. City of Baltimore, supra,* 312 Md. at 680–681, 541 A.2d at 1312; *Weyler v. Gibson, supra,* 110 Md. at 653–654, 73 A. at 263. *See also DiPino v. Davis,* 354 Md. 18, 50–53, 729 A.2d 354, 371–373 (1999); *Ritchie v. Donnelly,* 324 Md. 344, 370–375, 597 A.2d 432, 445–447 (1991).

Finally, we have held that the five-year statute of repose for medical malpractice actions set forth in § 5–109(a) of the Courts and Judicial Proceedings Article, and the 10 and 20–year statutes of repose for actions based on defective conditions in real property set forth in § 5–108 of that Article, are

not unreasonable restrictions upon remedies and access to the courts, and thus do not violate Article 19, *under circumstances where the injured claimants were adults.* *Hill v. Fitzgerald,* 304 Md. 689, 703–705, 501 A.2d 27, 34–35 (1985); *Whiting–Turner Contracting Co. v. Coupard,* 304 Md. 340, 359–360, 499 A.2d 178, 188–189 (1985)[8] The dispositive issue in the present case is whether the time limitations prescribed by § 5–109, as applied to an injured minor's claim, are unreasonable restrictions upon a traditional remedy and the minor's access to the courts and, therefore, are in violation of Article 19.

## B.

It is a long established principle of Maryland law that a tortious injury to a minor child gives rise to distinct causes of action, one by the minor child, which is brought on the child's behalf by a parent, guardian, or next friend, and another by the parents or guardians. Judge Karwacki for the Court in *Garay v. Overholtzer,* 332 Md. 339, 346, 631 A.2d 429, 432 (1993), set forth the principle and some of the earlier authorities as follows:

> "It is well settled that when a person negligently injures a minor two separate causes of action arise; the minor child has a cause of action for injuries suffered by it, and the parent or parents of the minor child have a cause of action for loss of services and for medical expenses incurred by the parent for the treatment of the minor's injuries. *Hudson v. Hudson,* 226 Md. 521, 174 A.2d 339 (1961); *see also Meyers v. Meagher,* 277 Md. 128, 352 A.2d 827 (1976); *County Comm'rs v. Hamilton,* 60 Md. 340 (1883); John H. Derrick,

---

**8.** Both the *Hill* opinion, 304 Md. at 703–704 n. 4, 501 A.2d at 34 n. 4, and the *Whiting–Turner* opinion, 304 Md. at 359, 499 A.2d at 188–189, acknowledged that there were some decisions to the contrary by courts in other states. The plaintiffs in the case at bar have not requested that we re-examine the *Hill* and *Whiting–Turner* Article 19 holdings. Moreover, the present case is factually quite different, as the injured claimant is a minor who is legally disabled from bringing an action himself during the periods prescribed in § 5–109(a). Consequently, we have no occasion at this time to re-examine the Article 19 holdings of *Hill* and *Whiting–Turner.*

Annotation, *Tolling of Statute of Limitations, on Account of Minority of Injured Child, as Applicable to Parent's or Guardian's Right of Action Arising Out of Same Injury,* 49 A.L.R.4th 216 (1986 & Supp.1992); L.S. Tellier, Annotation, *What Items of Damage on Account of Personal injury to Infant Belong to Home, and What to Parent,* 32 A.L.R.2d 1060 (1953, Supp.1989, & Supp.1993).

We went on in *Garay* to reiterate that one cause of action is not part of the other, that the " 'parent is not, as is sometimes held [elsewhere] ... a mere assignee of a part of the child's cause of action,' " that the parent's cause of action for medical expenses " 'is not derivative, in a legal sense, from the infant's cause of action,' " and that " 'the two rights of action are entirely separate and distinct.' " *Garay,* 332 Md. at 348, 631 A.2d at 433, quoting *Hudson v. Hudson, supra,* 226 Md. at 528–530, 174 A.2d at 343.

The Court also held in the *Garay* opinion that "the parents' claim for medical expenses is not required to be joined in the same action brought by the injured minor to recover for [his or her] own personal injuries," although the parents' claim and the minor's claim "may be brought in the same action," 332 Md. at 353, 355, 631 A.2d at 436–437, and that "the parents' claim for medical expenses [is not tolled] during the minority of the child," 332 Md. at 359, 631 A.2d at 439. In *Garay,* we further held that the parents' right to recover pre-majority medical expenses was not absolutely exclusive and that, under certain circumstances, the minor child could recover such expenses in the child's action, stating (332 Md. at 366, 631 A.2d at 442–443, footnote omitted):

"Thus, if a minor is contractually liable for medical expenses, it follows that the minor should be able to recover those expenses from a tortfeasor. Other jurisdictions have examined this question. *Moses v. Akers,* 203 Va. 130, 122 S.E.2d 864 (1961), set forth four circumstances which constitute exceptions to the general rule that parents possess the exclusive right to recover a minor's pre-majority medical expenses. These include the following: (1) when the minor child has paid or agreed to pay the expenses, (2) when the

minor child is legally responsible for payment, such as by reason of emancipation, or the death or incompetency of his parents, (3) when the parents have waived or assigned their right of recovery in favor of the minor child, or (4) when recovery of expenses is permitted by statute. *Moses v. Akers* at 132, 122 S.E.2d at 866.... We believe this reasoning is sound."

Although the trial court in *Garay* had dismissed the action on behalf of the minor child because it had not been brought within the general limitations period, this Court reversed that dismissal, concluding (332 Md. at 374, 631 A.2d at 447):

"Accordingly, the circuit court erred in dismissing the amended complaint. The amended complaint sets forth a claim for the minor's personal injuries and a claim by the minor for post-majority medical expenses. These claims are clearly vested in the minor. Moreover, if it can be shown that the minor's estate has paid or is responsible to pay for any pre-majority medical expenses, this claim is also vested in the minor. Because § 5–201 of the Courts Article tolls the statute of limitations, the minor is possibly entitled to relief on these claims."

In *Johns Hopkins Hospital v. Pepper*, 346 Md. 679, 697 A.2d 1358 (1997), we applied the holdings in *Garay* to a medical malpractice action based upon a hospital's negligent treatment of heart and lung abnormalities which the infant plaintiff suffered at birth. The parents' action for the child's pre-majority medical expenses was barred by limitations, and the trial court held that such expenses could not be recovered in the child's separate action. The Court of Special Appeals and this Court, however, reversed as to the child's claim for medical expenses. After reiterating the principles set forth in the *Garay* opinion, Judge Karwacki for the Court in *Pepper* reasoned as follows (346 Md. at 694–695, 697 A.2d at 1365–1366):

"In a case of catastrophic medical injury, we can certainly conceive of a situation where the parents can afford some but not all of the injured child's past, present, and future

medical expenses. Assuming limitations has barred parental claims for such, the doctrine of necessaries protects an injured minor's right to recover from a tortfeasor medical expenses that his or her parents are ill-able to afford and for which he or she ultimately may be liable. Otherwise, the child would be twice victimized—once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute their claims for medical expenses. We cannot countenance a result that would leave the only innocent victim in such a transaction uncompensated for his or her injuries and potentially beholden to the compelled generosity of the taxpayer. Public policy and justice demand that an injured minor's right to recover medical expenses in his or her own name after limitations has barred parental claims begin where the parents' financial ability to provide for medical necessaries ends."

We continued in *Pepper* by rejecting the hospital's alternative argument that the minor child must be liable to another for medical expenses before the child can recover them (346 Md. at 695–696, 697 A.2d at 1366, footnote omitted):

"Moreover, Hopkins's suggestion that a minor child's right to recover expenses for medical services only arises when he or she is liable to another for the provision of those services runs contrary to the general principle that 'recovery of damages based on future consequences of an injury may be had ... if such consequences are reasonably probable or reasonably certain' to occur. *Cooper v. Hartman*, 311 Md. 259, 270, 533 A.2d 1294, 1299 (1987); *Weimer v. Hetrick*, 309 Md. 536, 549, 525 A.2d 643, 650 (1987); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 666, 464 A.2d 1020, 1026 (1983). As a corollary to that rule, we think a minor child's showing that his or her parents were in the past, are presently, or in the future will become, financially unable to meet his or her medical needs, sufficiently triggers that child's right to recover medical expenses in his or her own name from a wrongdoer. That a child is presently not liable for such expenses is irrelevant. The law does not require a judgment against an injured child or his or her

estate before medical expenses may be individually recovered; only a showing that such expenses are or will be incurred as a natural and probable result of the tortious injury, and that at some point, his or her parents will be financially incapable of meeting those expenses." [9]

## C.

Like the principle that a minor suffering a tortious injury has a cause of action separate and distinct from that of the minor's parents, the principle that statutory time limits for a minor to bring an action do not begin running until the age of majority has been firmly established in our law for a long time.

The early English statutes of limitations contained provisions for tolling during infancy. Thus, a sixteenth century statute of limitations, 32 Henry VIII, ch. 2 (1540), reprinted in J.K. Angell, *A Treatise on the Limitations of Actions at Law* 504–505 (6th ed. 1876), stated as follows (emphasis in original):

"Provided also, that if any persons *being within the age of twenty-one yeares,* ... such person may sue ... at any time within six yeares next after such person, nor being within age shall accomplish the age of 21 yeares.... And also within the same six yeares shall have all and every such advantage in the same as he or they might have had before the making of this act."

The statute "which was adopted in most of the American colonies before the Revolution" [10] and is the "foundation" [11] of American limitations principles, is the Limitations Act of 1623,

---

**9.** For more recent discussions of the *Garay* and *Pepper* opinions, *see Schmidt v. Prince George's Hospital,* 366 Md. 535, 543–546 (majority opinion), 560–563 (dissenting opinion), 784 A.2d 1112, 1116–1118, 1126–1128 (2001), although the *Schmidt* case did not involve a tort claim by a minor.

**10.** *Wood v. Carpenter,* 101 U.S. 135, 139, 25 L.Ed. 807, 808 (1879).

**11.** *Ibid. See also Developments in the Law: Statutes of Limitations,* 63 Harv. L.Rev. 1177, 1229 (1950).

21 James I, ch. 16. With regard to certain property actions, § 2 of the 1623 Act provided (J.K. Angell, *supra*, at 506):

"That, if any person or persons that is or shall be entitled to such writ or writs, or that hath or shall have such right or title to entry, be, or shall be, at the time of the said right or title first ... accrued ... fallen within the age of one-and-twenty years, ... that then such person and persons, and his or their heir and heirs, shall or may, notwithstanding the said twenty years be expired, bring his action, ... within ten years next after his or their full age, ... and at no time after the said ten years."

As to other actions, such as trespass, detinue, trover, replevin, etc., where the limitations periods ranged from three to six years, § 7 of the 1623 Act stated (*id.* at 508):

"That if any person or persons that is or shall be entitled to any such action of trespass, detinue, action *sur trover*, replevin, actions of account ... be, or shall be, at the time of any such cause of action given or accrued, fallen or come within the age of twenty-one years, ... that then such person or persons shall be at liberty to bring the same actions, so as they take the same within such times as are before limited, after their coming to or being of full age, ... as other persons having no such impediment should be done."

This Court has held that "[t]he Statute 21 James I., ch. 16, [is] in force in this State," *Wickes v. Wickes*, 98 Md. 307, 325, 56 A. 1017, 1025 (1904), and, therefore, it is part of that body of law to which persons in Maryland are constitutionally entitled under Article 5 of the Maryland Declaration of Rights.[12] Early Maryland statutes reflected the principle of

---

12. Article 5 provides in pertinent part as follows:

"**Article 5. Common law and statutes of England applicable; trial by jury; property derived under charter granted to Lord Baltimore.** (A) That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circum-

the 1623 Act that periods of limitations were tolled during the plaintiff's infancy. *See, e.g.,* Ch. 23 of the Acts of 1715, § 3, reprinted in J.K. Angell, *supra,* at 586. The principle has consistently been embodied in Maryland law since that time and is now contained in § 5–201(a) of the Courts and Judicial Proceedings Article.[13] *See also, e.g., Funk v. Wingert,* 134 Md. 523, 527, 107 A. 345, 346 (1919) (The fact that a guardian or next friend could have brought suit during the period of disability does not remove the case from the tolling principle); *Dugan v. Gittings,* 3 Gill 138, 160–161 (1845); *Boyd v. Harris,* 2 Md. Ch. 210, 214 (1850) (If the minor had brought the action within 10 years of attaining majority, "he would be entitled to the benefit of the proviso in the Statute of 21st James, which Courts of equity have adopted"); *Hertle v. McDonald,* 2 Md. Ch. 128, 133–135 (1850), *aff'd,* 3 Md. 366, 383–384 (1852).

Consequently, from the issuance of the Maryland Charter in 1632 to the present, it has been an established principle of Maryland law that time periods for bringing suit are tolled during infancy.

## D.

As earlier mentioned, Article 5 of the Maryland Declaration of Rights authorizes the General Assembly to change common law principles or principles reflected in pre–1776 statutes.

---

stances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State. And the Inhabitants of Maryland are also entitled to all property derived to them from, or under the Charter granted by His Majesty Charles the First to Caecilius Calvert, Baron of Baltimore."

13. Section 5–201(a) states:
" § 5–20 1. **Persons under a disability.**
(a) *Extension of time.*—When a cause of action subject to a limitation under Subtitle 1 of this title or Title 3, Subtitle 9 of this article accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."

*See* n. 12, *supra.* Nevertheless, when such a change restricts a traditional remedy or access to the courts, the change " 'violates Article 19 . . . if the restriction is unreasonable.' " *Dua v. Comcast Cable, supra,* 370 Md. at 644, 805 A.2d at 1085, quoting *Murphy v. Edmonds, supra,* 325 Md. at 365, 601 A.2d at 113. Article 19, therefore, is a limitation upon the General Assembly's authority under Article 5.

The restrictions upon a minor's remedy and access to the courts, contained in subsections (b), (c) and (e) of § 5–109, represent a drastic departure from a principle which has governed minors' causes of action for more than 500 years. Until the recent enactment of these subsections, periods of limitations did not begin running against a child's claim until the child reached the age of majority. In our view, mandating that the three and five-year limitations periods run against a minor's tort claim from the time the minor is 11 years old, or under a few circumstances 16 years old, is an unreasonable restriction upon a child's remedy and the child's access to the courts.

Whichever interpretation of the discovery provision in § 5–109 is correct, the statute unfairly and unreasonably may abrogate a child's medical malpractice cause of action when the child is not at fault. If, as the federal District Court held, the three-year period begins running when the parents are on inquiry notice, the child's separate and distinct cause of action is entirely dependent upon knowledge of other persons. Basing the running of the three-year period on the child's knowledge, however, places an unreasonable burden upon an 11–year old.

Moreover, a child is disabled from bringing a tort action until he or she is 18 years old. Regardless of whose "discovery" triggers the running of the three-year period, a child's action must be brought by the parents on the minor child's behalf. Thus, if the parents are dilatory and fail to sue on behalf of the child, the three and five-year periods applicable to most child medical malpractice claims will expire, at the latest, when the child is 16 years old—two years before the

child is able to bring an action. With regard to the very limited types of medical malpractice claims set forth in subsection (c), when the time periods run from the age of 16, the child could have only one year after majority to bring the action.

This Court's language in *Johns Hopkins Hospital v. Pepper*, *supra*, 346 Md. at 694–695,697 A.2d at 1365–1366, is very apt in the case at bar. We emphasized in *Pepper* that, if the parents' failure to bring a claim before the expiration of limitations had the effect of barring the minor child's claim, "the child would be twice victimized—once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute [the] claims," 346 Md. at 695, 697 A.2d at 1366. The Court continued: "We cannot countenance a result that would leave the only innocent victim in such a transaction uncompensated for his or her injuries" and that such a result was contrary to "[p]ublic policy and justice," *ibid.* To this, we need only add that barring an injured child's medical malpractice claim before the child is able to bring an action is an unreasonable restriction upon the child's right to a remedy and access to the courts guaranteed by Article 19 of the Maryland Declaration of Rights.

Courts in other states, applying state constitutional provisions similar to Article 19, have reached the same conclusion with regard to statutes of limitations or repose which bar a minor child's medical malpractice claim before the child reaches the age of majority. In holding that such a statute violated the Arizona Constitution, the Supreme Court of Arizona in *Barrio v. San Manuel Division Hospital*, 143 Ariz. 101, 106–107, 692 P.2d 280, 285–286 (1984), explained:

"We have held that 'an infant cannot bring or defend a legal proceeding in person' *Pintek v. Superior Court*, 78 Ariz. 179, 184, 277 P.2d 265, 268 (1954). We are aware, of course, that action can be brought on behalf of the minor by a next friend, guardian ad litem, or general guardian. *Pintek, supra*. No doubt, most claims of minors are so presented. We are well aware that where a chance of substantial recovery exists, there is no lack of advocates willing to

undertake appropriate procedures to find and appoint a guardian ad item or to obtain a 'next friend' so that the action may be brought. While the vast majority of claims on behalf of injured minors will still be brought within a relatively short time after the injury occurs, this all depends upon good fortune; the minor himself is helpless.... The minor possesses a right guaranteed by the constitution, but cannot assert it unless someone else, over whom he has no control, learns about it, understands it, is aware of the need to take prompt action, and in fact takes such action.

\* \* \*

"Even if a minor ... can discover (realize) the existence of the injury, he is legally incapable of bringing the action, and must rely upon others. We agree with the Texas court that 'it is neither reasonable nor realistic to rely upon parents, who may be ignorant, lethargic, or lack concern, to bring the action.' *Sax* [*v. Votteler*, 648 S.W.2d 661 (Tex.1983) ], *supra*, at 667. We recognize, also, that some children are without parents or have parents who do not fulfill commonly accepted parental functions. The statute makes no exceptions for children who have unconcerned parents, children in foster care, or those in institutions; it applies alike to children who are precocious and those who are retarded, those who are normal and those who are brain injured, it applies to those with guardians and those without."

The Supreme Court of Missouri in *Strahler v. St. Luke's Hospital*, 706 S.W.2d 7, 11–12 (Mo.1986), employed similar reasoning to invalidate statutory provisions like § 5–109 as applied to minors' claims (footnote omitted);

"Recognizing that a minor lacks the legal capacity to bring an action in his own right as well the difficulties which generally surround a minor's ability to vindicate, by his own initiative, his legal rights, our statutes of limitations applicable to personal injury suits have traditionally been tolled for minors. The prosecution of an action by a guardian or next friend is an option available to the minor; failure of a next friend to bring the action during minority does not, howev-

er, destroy the cause of action, generally speaking. Nor for that matter does the running of a statute of limitations *technically* 'destroy' a minor plaintiff's right of action: it merely bars maintenance of the action and leaves the injured party without a remedy. *See generally, Herrman v. Dixon,* 285 S.W.2d 716 (Mo.App.1956). Thus, the general tolling provisions preserve the cause of action for a minor and safeguard the minor's constitutionally guaranteed right of access to the courts—even if parents, guardians or others having custody of a child *fail* to protect the child's legal rights.

"The statutory limitation period, as applied to minors, violates their right of access to our courts under Mo. Const. art. I, § 14 and renders vacant the guarantee contained in this constitutional provision which declares in no uncertain terms 'that the courts of justice shall be open to every person, and certain remedy afforded for every injury to person....' To the extent that it deprives minor medical malpractice claimants the right to assert their own claims individually, makes them dependent on the actions of others to assert their claims, and works a forfeiture of those claims if not asserted within [the time periods] ..., the provisions of § 516.105 are too severe an interference with a minors' state constitutionally enumerated right of access to the courts to be justified by the state's interest in remedying a perceived medical malpractice crisis."

In addition, *see, e.g., Mominee v. Scherbarth,* 28 Ohio St.3d 270, 275, 503 N.E.2d 717, 721 (1986) ("Thus, the sum and substance of [the statute] is that a minor shall have no standing to sue before attaining the age of majority, and no right to bring suit thereafter. Such, in our view, is totally unreasonable and patently arbitrary"); *Weiner v. Wasson,* 900 S.W.2d 316 (Tex.S.Ct.1995) (reaffirming earlier decisions that such statutes violate the Texas Constitution's equivalent to Article 19); *Sax v. Votteler,* 648 S.W.2d 661, 667 (Tex.S.Ct. 1983) ("It is neither reasonable nor realistic to rely upon parents, who may themselves be minors, or who may be ignorant, lethargic, or lack concern, to bring a malpractice

lawsuit action with the time provided by [the statute]"); *Lee v. Gaufin,* 867 P.2d 572, 590 (Utah S.Ct.1993) ("[T]he law must guard the rights of children, many of whom, unfortunately, live in families where attention to a child's needs may be wanting. * * * [T]he possibility that a child's rights may be lost through a parent's or another care giver's neglect, indifference, or abandonment is too great for the law to ignore"). *See also Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 231, 438 S.E.2d 15, 23 (1993) (Involving a tort claim other than medical malpractice, where the court held that "the legislative reduction of the tolling period for minors in this case" is unreasonable, pointing out that "[t]heir rights to file suit are entrusted to a parent or guardian, who may also be a minor, or who may be ignorant or unconcerned, and who, by inaction, could cause the minor to lose the right to file a claim").[11]

Turning to the case at bar, we respond to the certified question by holding that, in light of Article 19 of the Maryland Declaration of Rights, the three and five-year time periods prescribed by § 5–109(a) did not commence running against Christopher's claim until he attained the age of 18, which was after this action was filed.

*CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. PURSUANT TO § 12–610 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE. THE COSTS*

---

**14.** There are, however, a few cases that are contrary to the above-cited opinions. These cases hold that statutes similar to § 5–109, as applied to minors' claims, do not violate constitutional provisions like Article 19. *See, e.g., Barlow v. Humana,* 495 So.2d 1048, 1051 (Ala.S.Ct.1986) (The court distinguished the cases cited above on the ground that, under Alabama law, a minor can file his or her own lawsuit, and that the action need not be brought by a parent or next friend); *Maine Medical Center v. Cote,* 577 A.2d 1173 (Maine S.Ct.1990); *Plummer v. Gillieson,* 44 Mass.App.Ct. 578, 583, 692 N.E.2d 528, 532, *rev. denied,* 427 Mass. 1107, 699 N.E.2d 851 (1998) (The opinion mainly deals with equal protection and due process challenges, although at the end, without discussion, the court states that the right to a remedy clause of the state constitution was not violated); *Aicher v. Wisconsin Patients Compensation Fund,* 237 Wis.2d 99, 613 N.W.2d 849 (2000).

**220** 

*SHALL BE EQUALLY DIVIDED BETWEEN THE PAR-*
*TIES.*